IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE
WESTERN DIVISION

| | |
|---|---|
| SERVOROUS J. REEVES, | ) |
|     Plaintiff, | ) ) ) |
| v. | )   15-cv-1310-TMP ) |
| CAROLYN W. COLVIN, COMMISSIONER OF SOCIAL SECURITY, | ) ) ) ) |
|     Defendant. | ) |

**ORDER REMANDING CASE PURSUANT TO 42 U.S.C. § 405(g)**

Before the court is plaintiff Servorous J. Reeves's appeal from a final decision of the Commissioner of Social Security[1] ("Commissioner") denying his application for disability insurance benefits under Title II and Title XVI of the Social Security Act ("Act"), 42 U.S.C. §§ 401 *et seq*. On April 4, 2016, the parties consented to the jurisdiction of the United States magistrate judge pursuant to 28 U.S.C. § 636(c). (ECF No. 8.) This case was subsequently reassigned to the undersigned on March 13, 2017. For the reasons set forth below, the decision of the Commissioner is remanded.

    **I.    PROCEDURAL HISTORY**

---

[1]Carolyn W. Colvin was the Acting Commissioner of Social Security at the time this case was filed.

On March 10, 2011, Reeves applied for disability benefits under Title II and Title XVI of the Act, alleging disability beginning on September 27, 2010. (R. at 52.) The Social Security Administration ("SSA") denied these claims initially and upon reconsideration. (Id.) Upon Reeves's request, a hearing was held before an Administrative Law Judge ("ALJ") on January 9, 2012. (Id.) On June 3, 2013, the ALJ denied Reeves's request for benefits after finding that he was not under a disability because he retained the residual functional capacity ("RFC") to perform jobs that exist in significant numbers in the national economy. (R. at 52-59.)

On July 3, 2013, Reeves reapplied for disability benefits under Title II and Title XVI of the Act. (R. at 170, 175.) Reeves alleged disability beginning on June 4, 2013, due to injuries he sustained from a car accident in 2010, including a head injury and a broken hip. (R. at 188, 193.) Reeves's last date insured was December 31, 2014. (R. at 189.) The SSA also denied this application initially and upon reconsideration. (R. at 68, 87.) Reeves requested and received a second hearing before an ALJ on January 6, 2015. (R. at 32.) On February 11, 2015, the ALJ issued a decision denying Reeves's request for benefits after finding that Reeves was not under a disability because he retained the RFC to perform jobs that exist in significant numbers in the national economy. (R. at 10-25.) On

October 28, 2015, the SSA's Appeals Council denied Reeves's request for review. (R. at 1.) Therefore, the ALJ's decision became the final decision for the Commissioner. (Id.) Subsequently, on December 22, 2015, Reeves filed the instant action. (ECF No. 1.) Reeves argues that the ALJ erred when formulating Reeves's RFC by failing to consider the effects of Reeves's mental limitations on his RFC and by giving too little weight to the opinions of Reeves's examining physician and examining psychiatrist. (ECF No. 18 at 14–15.)

## II. CONCLUSIONS OF LAW

**A. Standard of Review**

Under 42 U.S.C. § 405(g), a claimant may obtain judicial review of any final decision made by the Commissioner after a hearing to which she or he was a party. "The court shall have power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing." 42 U.S.C. § 405(g). Judicial review of the Commissioner's decision is limited to whether there is substantial evidence to support the decision and whether the Commissioner used the proper legal criteria in making the decision. Id.; Burton v. Comm'r of Soc. Sec., No. 16-4190, 2017 WL 2781570, at *2 (6th Cir. June 27, 2017); Cole v. Astrue, 661 F.3d 931, 937 (6th Cir. 2011); Rogers v. Comm'r

of Soc. Sec., 486 F.3d 234, 241 (6th Cir. 2007). Substantial evidence is more than a scintilla of evidence but less than preponderance and is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Kirk v. Sec'y of Health & Human Servs., 667 F.2d 524, 535 (6th Cir. 1981) (quoting Richardson v. Perales, 402 U.S. 389, 401 (1971)).

In determining whether substantial evidence exists, the reviewing court must examine the evidence in the record as a whole and "must 'take into account whatever in the record fairly detracts from its weight.'" Abbott v. Sullivan, 905 F.2d 918, 923 (6th Cir. 1990) (quoting Garner v. Heckler, 745 F.2d 383, 388 (6th Cir. 1984)). If substantial evidence is found to support the Commissioner's decision, however, the court must affirm that decision and "may not even inquire whether the record could support a decision the other way." Barker v. Shalala, 40 F.3d 789, 794 (6th Cir. 1994) (quoting Smith v. Sec'y of Health & Human Servs., 893 F.2d 106, 108 (6th Cir. 1989)). Similarly, the court may "not try the case de novo, resolve conflicts in the evidence or decide questions of credibility." Ulman v. Comm'r of Soc. Sec., 693 F.3d 709, 713 (6th Cir. 2012) (quoting Bass v. McMahon, 499 F.3d 506, 509 (6th Cir. 2007)). The Commissioner, not the court, is charged with the duty to weigh the evidence and to resolve material conflicts in the testimony. Walters v. Comm'r of Soc. Sec., 127 F.3d 525,

528 (6th Cir. 1997); Crum v. Sullivan, 921 F.2d 642, 644 (6th Cir. 1990); Prater v. Comm'r of Soc. Sec., No. 114CV01221STATMP, 2017 WL 2929479, at *1 (W.D. Tenn. July 10, 2017).

**B.   The Five-Step Analysis**

The Act defines disability as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1).  Additionally, section 423(d)(2) of the Act states that:

> An individual shall be determined to be under a disability only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work.  For purposes of the preceding sentence (with respect to any individual), "work which exists in the national economy" means work which exists in significant numbers either in the region where such individual lives or in several regions of the country.

Under the Act, the claimant bears the ultimate burden of establishing an entitlement to benefits. Oliver v. Comm'r of Soc. Sec., 415 F. App'x 681, 682 (6th Cir. 2011).  The initial

-5-

burden is on the claimants to prove they have a disability as defined by the Act. Siebert v. Comm'r of Soc. Sec., 105 F. App'x 744, 746 (6th Cir. 2004) (citing Walters, 127 F.3d at 529); see also Born v. Sec'y of Health & Human Servs., 923 F.2d 1168, 1173 (6th Cir. 1990). If the claimant is able to do so, the burden then shifts to the Commissioner to demonstrate the existence of available employment compatible with the claimant's disability and background. Born, 923 F.2d at 1173; see also Griffith v. Comm'r of Soc. Sec., 582 F. App'x 555, 559 (6th Cir. 2014).

Entitlement to social security benefits is determined by a five-step sequential analysis set forth in the Social Security Regulations. See 20 C.F.R. §§ 404.1520, 416.920. First, the claimant must not be engaged in substantial gainful activity. See 20 C.F.R. §§ 404.1520(b), 416.920(b). Second, a finding must be made that the claimant suffers from a severe impairment. 20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(5)(ii). In the third step, the ALJ determines whether the impairment meets or equals the severity criteria set forth in the Listing of Impairments contained in the Social Security Regulations. See 20 C.F.R. §§ 404.1520(d), 404.1525, 404.1526, 416.920(d). If the impairment satisfies the criteria for a listed impairment, the claimant is considered to be disabled. On the other hand, if the claimant's impairment does not meet or equal a listed

impairment, the ALJ must undertake the fourth step in the analysis and determine whether the claimant has the RFC to return to any past relevant work. See 20 C.F.R. §§ 404.1520(a)(4)(iv), 404.1520(e), 416.920(a)(4)(iv). If the ALJ determines that the claimant can return to past relevant work, then a finding of not disabled must be entered. Id. But if the ALJ finds the claimant unable to perform past relevant work, then at the fifth step the ALJ must determine whether the claimant can perform other work existing in significant numbers in the national economy. See 20 C.F.R. §§ 404.1520(a)(4)(v), 404.1520(g), 416.960(c)(1)-(2). Further review is not necessary if it is determined that an individual is not disabled at any point in this sequential analysis. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4).

**C. The ALJ's RFC Analysis**

As a preliminary matter, the court notes that the ALJ's determination was restrained by the principles of res judicata due to the presence of the prior disability determination. Drummond v. Comm'r of Soc. Sec., 126 F.3d 837, 842-43 (6th Cir. 1997). Consequently, the ALJ could only alter the prior decision if Reeves presented proof of "changed circumstances." Id.; AR 98-4(6), 1998 WL 283902, at *3 (June 1, 1998)("[A]djudicators must adopt such a finding from the final

decision by an ALJ . . . unless there is new and material evidence relating to such a finding . . . .").

Turning to the facts of this case, in a function report that Reeves filled out on August 3, 2013, Reeves reported that he was unable to pay bills, handle a savings account, or use a checkbook without help and that counting money was difficult for him. (R. at 204-05.) He also said that others had to remind him to go places and he had problems with his memory, completing tasks, concentration, following instructions, and understanding; although he clarified that, while he could only get halfway through written instructions, he could follow spoken instructions "pretty good." (R. at 205-06.) At a consultative examination with Jennifer Johnson, M.D., on October 7, 2013, Reeves stated that he struggled with headaches, memory problems, dizziness, and forgetfulness. (R. at 332.)

According to Reeves's records, Reeves received treatment for depression from February 24, 2014, to October 24, 2014, from Kary Morford, a nurse practitioner at Quinco Mental Health Center. (R. at 361-79.) Over the course of the treatment, Reeves discussed his depression and bouts of isolation. (R. at 368-69, 372-76.) In her treatment notes, Morford consistently described Reeves as having an appropriate appearance, engaging in the sessions, and being alert and oriented. (Id.) Morford

indicated that Reeves claimed his symptoms improved with medication. (Id.)

On December 22, 2014, Sidney Moragne, M.D., a psychiatrist, examined Reeves and opined on the effects of his mental limitations. (R. at 393-95.) Dr. Morange stated that Reeves had auditory hallucinations, panic attacks triggered by crowded areas, limited social interactions, and recent and remote memory impairment. (R. at 394.) Dr. Morange diagnosed Reeves with major depression with psychotic features and panic disorder with agoraphobia.

During the hearing on January 6, 2015, Reeves testified that he continued to have headaches and to isolate himself when guests came to his house. (R. at 38, 40.) He said that, while the antidepressants he received from Quinco helped him, he still had a hard time leaving the house or getting along with others. (R. at 41-42.) He also testified that he had difficulty focusing and concentrating. (R. at 42.) Near the end of the hearing, the ALJ asked the vocational expert whether there were jobs available for an individual who could perform work at the medium exertional level but had postural limitations, temperature limitations, and could not maintain attention and concentration for more than thirty minutes at a time for six hours in an eight-hour work day. (R. at 44-45.) The expert opined that such an individual could not work. (R. at 45.)

At step two of his analysis, the ALJ reviewed all of this evidence and stated that, "the evidence shows only intermittent symptoms that have never caused more than mild limitations in daily activities, social functioning, maintenance of concentration, persistence or pace, or a significant mental decompensation." (R. at 16.) The ALJ then concluded these mild limitations were non-severe. (Id.) However, at step four, when determining Reeves's RFC, the ALJ made no mention of these mental limitations and, ultimately, assigned Reeves the following RFC:

> [T]he claimant has the residual functional capacity to perform medium work as defined in 20 [C.F.R. §§] 404.1567(c) and 416.967(c) except he could occasionally climb ladders, ropes, or scaffolds and frequently perform all other postural activities; and the claimant cannot tolerate exposure to extreme cold.

(R. at 20-23.)

Reeves argues that the ALJ should have considered his mental limitations when assessing his RFC. The Commissioner responds that it was appropriate for the ALJ to omit Reeves's mental limitations from his RFC because they were non-severe and treatable by medication.

A claimant's RFC is "the most [the claimant] can still do despite [his] limitations." 20 C.F.R. §§ 404.1545(a)(1), 416.945(a)(1). "[T]he ALJ is charged with the responsibility of evaluating the medical evidence and the claimant's testimony to

-10-

form an 'assessment of [the claimant's] residual functional capacity.'" Webb v. Comm'r of Soc. Sec., 368 F.3d 629, 633 (6th Cir. 2004)(quoting 20 C.F.R. § 416.920(a)(4)(iv)). When assessing a claimant's RFC, an ALJ "must consider limitations and restrictions imposed by all of an individual's impairments, even those that are not 'severe.'" SSR 96-8p, 1996 WL 374184, at *5 (July 2, 1996); 20 C.F.R. § 404.1545(a)(2) ("We will consider all of your medically determinable impairments of which we are aware, including your medically determinable impairments that are not 'severe,' . . . when we assess your residual functional capacity."); 20 C.F.R. § 416.945(a)(2)(same).

Here, the court finds the ALJ erred by not considering Reeves's mental limitations when determining his RFC. See Simpson v. Comm'r of Soc. Sec., 344 F. App'x 181, 190–91 (6th Cir. 2009) (finding that once an ALJ determined a claimant suffered from a severe impairment, "the ALJ was required to consider the impairments resulting from this condition and her adjustment disorder with anxiety and depression in assessing her RFC"). In certain instances, despite an ALJ's failure to explicitly analyze non-severe conditions in the RFC section, a court may hold that the ALJ met regulatory requirements if the court can infer from the ALJ's RFC analysis that the ALJ considered all of the claimant's impairments. See Coldiron v. Comm'r of Soc. Sec., 391 F. App'x 435, 443 (6th Cir.

2010)("Given the ALJ's discussion of Coldiron's obesity throughout his findings of fact and the ALJ's use of RFCs from physicians who explicitly considered Coldiron's obesity, we find that the ALJ adequately accounted for the effect that obesity has on Coldiron's ability to perform sedentary work."); White v. Berryhill, No. 2:15-CV-00060, 2018 WL 1070895, at *8 (M.D. Tenn. Feb. 26, 2018)(finding that an ALJ considered all limitations when determining a claimant's RFC because "in his discussion of [the claimant's] RFC, the ALJ referenced [the claimant's] testimony that she 'gets nervous and jittery around unfamiliar people' has panic attacks, depression, anxiety, and difficulty concentrating").

Unlike in Coldiron and White, the ALJ's discussion of Reeves's RFC lacks any basis for inferring that the ALJ considered Reeves's mental limitations. There is one expert whom the ALJ cited in his RFC analysis who touched on some of Reeves's mental limitations — Dr. Johnson. However, Dr. Johnson merely noted, without analysis, that Reeves said he experienced problems with his memory. Furthermore, when discussing Reeves's testimony, the ALJ did not, at any point, refer to Reeves's discussion of his mental health limitations. Finally, while the ALJ may have asked the vocational expert a hypothetical question concerning the effects of mental limitations on a person's ability to work, that alone is not sufficient grounds from which

-12-

the court could reasonably infer that the ALJ considered these limitations when formulating Reeves's RFC. See Price v. Colvin, No. 13-1020, 2016 WL 5239837, at *7 (W.D. Tenn. Sept. 22, 2016)(remanding a case because "the ALJ did not mention Claimant's depression after step two").

As for the Commissioner's argument about treatability, Reeves's positive response to medication is relevant to an ALJ's analysis of the effects Reeves's mental limitations have upon his RFC; it does not substitute for that analysis. Therefore, the court will remand the case for the ALJ to analyze the effects that Reeves's mental limitations may have upon his RFC.

### III. CONCLUSION

For the foregoing reasons, the court reverses the ALJ's decision and remands the case pursuant to sentence four of 42 U.S.C. § 405(g) for proceedings consistent with this opinion.

IT IS SO ORDERED.

s/ Tu M. Pham  
TU M. PHAM  
United States Magistrate Judge

March 19, 2018  
Date